**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

DENISE MCKEOWN and ROBERT LUTTS

*Plaintiffs*

v.                                                            Civil Action No.: 05-10176-RGS

ADVEST, INC., et. al.

*Defendants*

Consolidated With

T. ROWE PRICE TAX-FREE HIGH YIELD
FUND, INC. et al.

*Plaintiffs*,                                  Civil Action No.: 04-11667 RGS

v.

KAREN M. SUGHRUE, et. al.,
*Defendants*.

**PLAINTIFFS' SUPPLEMENTAL OPPOSITION TO BRADFORD TRUSTEE
DEFENDANTS' MOTION TO DISMISS AND PROPOSAL FOR DISCOVERY ON
TRUSTEE COMPENSATION**

At oral argument on Defendants' Motions to Dismiss the Plaintiffs' complaints, the Court

gave the Plaintiffs' leave to file a supplemental brief on additional reasons why the Court should

reject the Bradford Trustee Defendants argument that they were immune from liability under the

Massachusetts state law claims.   The Court also asked the Plaintiffs to submit a proposal for

discovery relating to the Trustee Defendants' affirmative defense that they were uncompensated, and

consequently qualified for immunity under M.G.L.c. 231, §§ 85K and 85W.  The Plaintiffs[1] submit

this memorandum to address both of those concerns.

---

[1]      This memorandum is submitted on behalf of all Plaintiffs in both actions.

In the first half of the memorandum, Plaintiffs demonstrate that their state law statutory claims against the Bradford Trustees are not affected by the immunity statutes cited by the Trustee Defendants. A long line of decisions from Massachusetts appellate courts make it clear that these statutes do not apply to statutory schemes that create liability beyond traditional tort boundaries. Further, even if the Defendants qualify for immunity, the Plaintiffs common law fraud claim states a cause of action that would still be viable. The fraud claims cannot be dismissed without an opportunity for the Plaintiffs to conduct full discovery.

In the second half of this memorandum, Plaintiffs propose a course of action that will allow investigation of the Trustee compensation issue without depositions or formal discovery. Bradford College's bankruptcy counsel, Gadsby & Hannah, is currently holding approximately 55 boxes of Bradford College documents that counsel for the Plaintiffs and the Officer and Trustee Defendants personally selected for preservation in connection with this litigation. These boxes contain, inter alia, all extant records relating to the Bradford Board of Trustees and should contain documentary evidence to support or refute the Trustees' contention that they received no compensation of any sort. Plaintiffs believe that if the Court confirms the Plaintiffs' right to have access to this material, the Plaintiffs can report to the Court within 30 days of such access whether they will be able to rebut the Sughrue affidavit.

I.   **NEITHER M.G.L. c. 231, §§ 85K OR 85 W PROVIDE IMMUNITY TO STATUTORY CAUSES OF ACTION FOR VIOLATION OF CHAPTER 93A OR THE MASSACHUSETTS UNIFORM SECURITIES ACT**

The Trustee Defendants assert they are immune to Massachusetts state law liabilities pursuant to M.G.L. c. 231 §§ 85K and 85W, both of which provide immunity from certain types of tort liability to non-compensated directors of charitable entities. Although these statutes clearly apply

to common law claims, such as the Plaintiffs' negligent misrepresentation counts, Massachusetts courts have consistently held that charitable immunity statutes do not apply to statutory causes of action, such as the claims the Plaintiffs have brought under Chapter 93A and Chapter 110A. Indeed, in Linkage Corp. v. Trustees of Boston University, 425 Mass. 1, 27-28, 679 N.E. 2d 191, 209-10 (1997) the Supreme Judicial Court expressly ruled that one of the immunity statutes the Trustees rely upon, M.G.L. c. 231 §85K, does not apply to Chapter 93A claims.

The SJC's reasoning in Linkage Corp. was straightforward. Liability for violations of Chapter 93A was not within the scope of immunity created by the statute. Section 85K immunizes certain types of tort liability, but Chapter 93A created "'broad new rights, forbidding conduct not previously unlawful under the common law of contract and tort or under any prior statute'", 425 Mass at 27, 679 N.E. 2d at 209, quoting Dodd v. Commercial Union Ins. Co., 373 Mass 72, 78, 365 N.E.2d 802 (1977). Liability could attach under Chapter 93A which was not dependent upon the traditional tort theories that were the focus of the immunity permitted under § 85K. Id. Thus, applying § 85K immunity to Chapter 93A would impair the liability scheme crafted to deter unfair business practices and expand the immunity beyond the boundary anticipated by the Legislature.

Cases subsequent to Linkage Corp have applied its rationale to other statutory liabilities, and leave little doubt that a Massachusetts appellate court would also refuse to apply the immunity statutes to a claim under §410 of the Massachusetts Uniform Securities Act. For example, the First Circuit in MacMillan v. Massachusetts Society for the Prevention of Cruelty to Animals, 140 F.3d 288, 307 (1st Cir. 1998) refused to apply § 85K against a claim for employment discrimination under M.G.L. c. 151B. The Court found that Chapter 151B, like Chapter 93A, created a statutory basis of liability that forbad conduct not previously unlawful under the common law or prior statutes, and

3

thus could not be properly called a "tort claim" for the purpose of the immunity statute. Id. The SJC agreed with the First Circuit's analysis and conclusion when it was called upon to definitively rule upon the application of §85K to Chapter 151B cases. Ayash v. Dana Farber Cancer Institute, 443 Mass. 367, 882 N.E. 2d 667, 687 (2005). The Court specifically held "(t)he charitable cap does not apply to most statutory violations, unless there is a 'tort' within the meaning of the statute." See also Birbiglia v. Saint Vincent Hospital, 427 Mass. 80, 88, 692 N.E. 2d 9 (1998) (§ 85K does not apply to violations of the Massachusetts Wiretap statute, M.G.L. c. 272, § 99).

The Massachusetts Uniform Securities Act, like Chapter 93A, Chapter 151B and the wiretap statute, creates rights and obligations not previously existing under the Massachusetts common law. For example, the very provision of the statute that the Plaintiffs are attempting to enforce against the Defendants, § 410, imposes liability merely because an individual was an officer or director of an entity that made a false statement regarding a security. Prior to the passage of the Securities Act, such status would not incur liability, and clearly does not constitute a tortuous act, by itself, under Massachusetts law.

Moreover, in Ayash, the SJC found it persuasive that the drafters of Chapter 151B considered excluding non-profit entities from the operation of Chapter 151B, but ultimately chose not to grant such an exemption. 822 N.E. 2d at 688. There is evidence of a similar deliberate legislative choice here. Like the federal statute, the Massachusetts Uniform Securities Act exempts securities issued by any person organized and operated not for profit and exclusively for educational or other charitable purposes. M.G.L. c. 110A, § 402(9). But also, like the federal statute, this exemption only provides exemption from the Act's registration provisions. Neither the Legislature or the drafters of the Uniform Act sought to expand the exemption to cover the anti-fraud provisions. This

4

must be viewed as a deliberate choice–the drafters were clearly aware that non-profit issuers were entitled to some relaxation of the statute, but did not choose to provide complete immunity. To expand a tort immunity that was never intended to cover this type of liability would undo the very framework the Legislature created for the protection of investors.

The cases cited above only concerned application of § 85K and the Trustees will undoubtably assert that § 85W, which provides somewhat broader immunity[2], should not be subject to the same scope restrictions. Indeed, while § 85 K expressly provides a defense against "any cause of action based on tort," no such limiting language is contained in the text of § 85W. However, the legislative history is clear that § 85W, like § 85K, was only intended to apply to tort liability, not a general waiver from all statutory liabilities. This is evident from the title of the statute "Officers and directors of charitable corporations; tort liability." (Emphasis added). Similarly the name of the Act also confirms the limitation of the immunity. Section 85W was added by St. 1987, c. 345, which was entitled "An Act extending the limitation of tort liability to officers and directors of charitable corporations." The Legislature did not state that it was limiting liability generally, and clearly indicated § 85W was only supposed to apply to "tort liability." While the title of an act cannot be used to circumvent the clear terms of a statute, it is persuasive evidence of the Legislature's intended scope of a statute and how the statute should be construed. Nunez v. A & M Rentals, Inc., 63 Mass. App. 20, 822 N.E. 2d 743, 747 (2005); Botello v. Massachusetts Port Authority, 47 Mass. App. 788,

---

[2]        Section 85K requires the defendant to establish that he was acting in good faith as part of his burden of proof to invoke the immunity. No such requirement exists under § 85W. Further, § 85K does not apply if the injury or damage was caused by "willful or wanton conduct," while the exception under § 85W only excludes "acts or omissions intentionally designed to harm" when the conduct does not cause personal injury. The exception under § 85W is narrower because it excludes only conduct intending to harm, while under § 85K reckless conduct may still be actionable. Official Committee of Unsecured Creditors v. Ricks (In re Boston Regional Medical Center), 328 F. Supp. 2d 130, 164 (D. Mass. 2004).

790, 716 N.E. 2d 664 (1999). There is no evidence that the Legislature intended § 85W to provide directors and officers of non-profit organization carte blanche civil immunity from all statutory schemes.[3]

Thus, regardless of whether the Bradford Trustees can establish their entitlement to invoke the immunity statutes, they cannot avoid liability under the Plaintiffs' Chapter 93A claims or their claims for violation of the Massachusetts Uniform Securities Act.

## II.    PLAINTIFFS' FRAUD CLAIMS SURVIVE REGARDLESS OF THE TRUSTEE DEFENDANTS' INVOCATION OF THE IMMUNITY STATUTES

Regardless of the Trustee Defendants' ability to make the initial showing concerning the applicability of the two immunity statutes, Plaintiffs' fraud claims should survive. Even the broader of the two immunity statutes, § 85W, provides an exception for "acts or omissions intentionally designed to harm." Plaintiffs have alleged such conduct in their fraud counts. If the Trustee Defendants knew that the disclosures were misleading, their conduct can be found to constitute acts or omissions designed to harm. Assuming Plaintiffs' fraud claim otherwise satisfies Fed.R.Civ.P. 9(b), they have stated a cause of action that falls within the immunity statutes' exception clauses.

---

[3]      The Trustees may argue that due to the close similarity between the immunities provided by §§ 85K and 85W, the enactment of § 85W makes no sense unless it was intended to exempt liability beyond recognized tort law. The amendment of § 85K that added the immunity for non-compensated officers and directors was passed during the same Legislative session as § 85W, only nine days earlier. It is hard to believe that during that week and a half the Legislature was so dissatisfied with the immunity it had enacted that it intended to grossly expand the exemption. More likely, what the Legislature intended to do is exactly what it said St. 1987, c. 345 was supposed to do; "extend" (not "expand") the existing tort immunity. And indeed, as demonstrated in footnote 2, the newer enactment does provide greater protection by removing the requirement that the defendant prove good faith and restricting the uncovered conduct to intentional, as opposed to reckless, conduct. The Court does not have to ignore the best evidence of the Legislature's intent to make sense of the enactment.

Plaintiffs do not believe that the intentionality of the Trustee Defendants' acts, unlike their compliance with the non-compensation provision of the immunity statute, can be the subject of expedited resolution. Whether Defendants acted with the requisite state of mind requires discovery of the full merits of Plaintiffs' claim and complete deposition of each of the Trustee Defendants. Indeed, the only case that has attempted to apply § 85W to a misrepresentation claim implicitly acknowledges this fact. In <u>Official Committee of Unsecured Creditors v. Ricks (In re Boston Regional Medical Center)</u>, 328 F. Supp. 2d 130, 164 (D. Mass. 2004), Judge Wolf refused to consider the application of § 85W immunity to the fraud claims against the uncompensated trustees until discovery had been completed and the parties had exchanged their expert reports. Only on a full record could the Court determine if the intentional conduct exception should be applied. The same procedure should be followed here.[4] Consequently, Plaintiffs' fraud claims cannot be dismissed, and Defendants' motion should be deferred until the conclusion of discovery.

**III.    PERMITTING PLAINTIFF ACCESS TO THE BRADFORD COLLEGE RECORDS THAT HAVE BEEN DELIBERATELY SET ASIDE FOR THE PROSECUTION OF THIS LITIGATION IS THE EASIEST WAY TO FLESH OUT THE TRUSTEE DEFENDANTS' ENTITLEMENT TO INVOKE THE IMMUNITY STATUTES**

At oral argument the Court asked the Plaintiffs to propose the discovery they would need to respond to the factual allegations in the Sughrue affidavit. Plaintiffs do not believe that limited scope depositions are the best way to approach this issue. It is always inconvenient to depose a

---

[4]    Defendants will likely cite the Plaintiffs' admission that they cannot currently set forth facts regarding the Trustee Defendants' scienter to argue that Plaintiffs cannot state a cause of action for intentional fraud. Defendants confuse the pleading standards for a garden variety fraud claim with those required under the PSLRA. Under Rule 9(b), Plaintiffs are only required to plead the circumstances of fraud with specificity, and can aver the defendants' state of mind generally. There is no requirement to plead specific facts regarding scienter in a non-securities case. The potential application of §85K or §85W does not act to import a higher pleading standard. The Legislature has not required the Plaintiff to make some sort of special showing before pleading a claim that might involve an exception to the immunity statutes, compare, M.G.L. c. 231, § 59H, and the Court cannot create a higher pleading standard in this case.

witness with the possibility that the witness may have to return.  Limited scope depositions also invariably lead to argument among counsel regarding the permissible boundaries.  Here it is uncertain how many depositions are necessary.  There are 17 Trustee Defendants each of whom served different length terms.  Policies regarding compensation or incentives may have changed over time, and each Trustee may have been treated differently.  A deposition of each of the Trustee Defendants would be the most thorough method of investigating this issue.  Finally, given the fact that the Defendants would be testifying about events that took place no less than six years ago, it is uncertain how valuable limited scope depositions would be; memories do fade and Plaintiffs would not have documents available to refresh them.  Without documents to review with witnesses, depositions on this matter are likely to be a waste of time.

Review of documentary evidence is the best way to determine what types of compensation or incentives were provided to the Trustees.  Ordinarily, such a review would run afoul of the discovery stay implemented by the PSLRA, 15 U.S.C. § 78u-4(b)(3)(B), but in this case the documents can be expeditiously reviewed without formal discovery; they have already been segregated for the use of the litigants in this action, and can be examined without imposing any burden on the Defendants.

A.    Bradford College Has Voluntarily Agreed To Permit Plaintiffs To Review The Relevant Records, But Defendants Have Unreasonably Interfered With Plaintiffs' Access

While the motions to dismiss were pending, Plaintiffs' counsel was contacted by Brenda Smith, a former officer of Bradford who had been retained by the bankruptcy estate to assist in the College's liquidation of assets.  Ms. Smith informed Plaintiffs' counsel that the College intended to sell the building that the administrative records of the College had been kept, and the College was

8

offering the Plaintiffs the opportunity to select which boxes the Plaintiffs would like to have preserved for the litigation. Anything not selected would be destroyed. A similar message was communicated to counsel for the Bradford Officers and Trustees, and on a mutually convenient date, counsel for the Plaintiffs and the Bradford Defendants met in Haverhill to jointly examine the remaining records.

The attorneys spent a full day reviewing approximately 150 boxes, and agreed to preserve between 55 and 60 boxes. Counsel for the parties agreed that the boxes would be stored at the offices of Bradford's bankruptcy counsel, Gadsby & Hannah, and they agreed to split the expense of shipping and storing the boxes. After the boxes were shipped to Gadsby & Hannah, counsel for the Plaintiffs called its offices to make arrangement to copy the preserved material. He was informed that the documents would be available once counsel to this action reached agreement among themselves.

Counsel for the Plaintiffs made various proposals to the Trustee and Officer Defendants, including that Plaintiffs would simply scan the contents of the boxes (at Plaintiffs' expense) and allow Defendants to retain the originals. See September 14, 2005 letter from Michael Tabb to Scott Roberts, attached as Exhibit 1. Counsel for the Bradford Trustees and Officers, however, refused to even discuss Plaintiffs copying the documents pending a decision on the Motions To Dismiss.

> With respect to the Bradford College documents in the care and custody of Gadsby Hannah, I understand that Gadsby Hannah has indicated that it will not permit the bondholders to begin inspecting and copying those documents at this time absent an agreement of all parties. On behalf of Bradford's trustee and officers, please be advised that we will not agree that such inspection and review may occur while defendants' various Motions to Dismiss are pending before Judge Stearns. The Private Securities Litigation Reform Act plainly provides that "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court

> finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party."   15 U.S.C.A. §78u-4(b)(3)(B) . . . There is no basis to sidestep this restriction. (emphasis in original)

See Letter of September 15, 2005 from Scott Roberts to Michael Tabb, attached as Exhibit 2.

Consequently, the Trustee Defendants have unilaterally blocked the Plaintiffs access to documents that were voluntarily being provided and which none of the Defendants have any right to possess or control.  Plaintiffs believe an order from this Court restraining Defendants from interfering with Plaintiffs' reasonable efforts to review the Bradford documents is appropriate.

B.    Permitting Plaintiff Access To Documents Voluntarily Being Produced By Bradford College Does Not Violate the PSLRA Discovery Stay

The Trustee Defendants contend that allowing Plaintiffs access to documents owned and controlled by a third party, who is willing to voluntarily produce such documents, constitutes a violation of the PSLRA discovery stay.  Nothing, however, in the PSLRA prohibits a plaintiff from attempting to investigate an alleged securities fraud without using discovery; indeed, the detailed pleading requirements of the Act require such independent investigation.  Allowing the Plaintiffs to copy documents that have voluntarily been provided to the Plaintiffs (and, indeed, which the Plaintiffs have already reviewed once) does not implicate the discovery stay, but on the contrary reinforces the Act's goal that investigation of securities fraud be performed without the use of discovery devices.

Indeed, it is hard to understand how permitting Plaintiffs to copy the documents voluntarily offered to them would violate § 78u-4(b)(3)(B).  Plaintiffs are not using, or threatening to use, discovery.  None of the discovery devices authorized by Section V of the Rules of Civil Procedure,

such as interrogatories, subpoenas duces tecum, requests for admissions, requests for inspection or depositions, are being used here.  If Plaintiffs are not employing discovery, there can be no violation of the discovery stay.  The only Court intervention Plaintiffs request is to prohibit Defendants from interfering with Plaintiffs' access to the documents through a spurious invocation of the discovery stay.[5]

Even, however, if the Plaintiffs' request to halt Defendants' interference with Plaintiffs' access to the Bradford documents could be construed to constitute a request for "discovery," Plaintiffs meet the requirements for such discovery under § 78u-4(b)(3)(B).  Particularized discovery may be permitted to prevent undue prejudice to a party.  Here, the Trustee Defendants have gone beyond moving to dismiss and have requested the Court to enter summary judgment against the Plaintiffs on a factual issue the Plaintiffs have had no opportunity to rebut.  Without any ability to examine College records to see what kind types of benefits were provided to the Trustees, it is impossible to prepare an adequate response.  Dismissal of Plaintiffs' state law claims without access to possible rebutting evidence certainly constitutes "undue prejudice."

Moreover, the "discovery" requested will not burden the Defendants or even the party that will provide the information.  Defendants will incur no expense or burden if Plaintiffs copy documents.  They do not have to gather or review the documents prior to Plaintiffs' viewing since they do not own or have any right to the documents.  The documents have already been segregated, and the only burden to Bradford is to move the boxes to a conference room.  The requested access places no burden or expense on anyone except the Plaintiffs.

---

[5]      Defendants have not indicated any disagreement with Plaintiffs' proposals for insuring equal access and preservation of the documents.  If there are any such objections, Plaintiffs will be happy to address Defendants' reasonable concerns.

Nor can Defendants complain because not all of the material in the boxes relates to the compensation issue. It would be more burdensome to the parties and Bradford to go through the boxes to further pare down the materials than to make all boxes available to the Plaintiffs and let them have the burden of finding relevant materials. The owner of the documents, Bradford, has no objection to such a procedure. And the Plaintiffs have already had one opportunity to review these documents. Plaintiffs will not be exposed to anything they to which they have not had access before. Section 78u-4(b)(3)(B) protects Defendants from having to bear the costs and burdens of participating in discovery before the plaintiff has established that it can state a cause of action, but it does not give defendants the right to interfere with Plaintiffs' ability to copy documents willingly produced by a third party, or to seclude records that plaintiff has already viewed. Defendants will suffer no costs or expenses if the Court confirms the Plaintiffs' access to the Bradford documents, but the Plaintiffs will be severely prejudiced if they must oppose summary judgment without an opportunity to review documentary evidence that may support their case.

C.      Plaintiffs' Proposal To Respond To The Trustee Defendants' Summary Judgment Motion on the Applicability of M.G.L.c. 231, §§ 85K and 85W.

Assuming the Court confirms the Plaintiffs' right to have access to the Bradford College documents currently in the possession of Gadsby & Hannah, Plaintiffs propose that they be given 30 days from the date of such order to respond to the Sughrue affidavit, attaching to their response the documents they assert supports evidence of compensation. The Trustee Defendants shall be given a reasonable amount of time to respond.

The Plaintiffs shall not take any depositions, unless the Trustee Defendants assert that the documents Plaintiffs rely upon in their opposition are documents which the Court may not properly

consider in deciding a motion for summary judgment (i.e. lack of authentication, hearsay, etc.).  In such event, Plaintiffs may take depositions which shall be limited to establishing an evidentiary foundation for the selected documents or establishing the content of the documents to the extent they bear upon matters raised in the Sughrue affidavit.  Plaintiffs shall inform the Court of their intention to take such depositions within seven days of the filing of the Trustee Defendants' reply and shall conduct any such depositions within 30 days.  Plaintiff shall submit any supplemental opposition based upon the depositions taken within 14 days of the conclusion of the 30 day period. [6]

## CONCLUSION

For the reasons set forth herein, the Court should:

a.      Deny the Trustee Defendants' Motion To Dismiss Based Upon M.G.L. c. 231, §§ 85K and 85W in connection with Plaintiffs' counts for violation of Chapter 93A, violation of the Massachusetts Uniform Securities Act and fraud;

b.      Defer decision of the Trustee Defendants' Motion For Summary Judgment in connection with Plaintiffs' fraud count until the conclusion of discovery;

c.      Enter an order prohibiting Defendants from withholding their consent for Plaintiffs to examine and copy the Bradford College documents currently in the possession and control of Gadsby & Hannah; and

d.      Enter the Plaintiffs' proposal for responding to the Trustee Defendants' Motion for Summary Judgment as a procedural order of the Court.

---

[6]      Plaintiffs expect that the parties will work together to agree upon the record for decision of the Trustee Defendants' summary judgment motion, and depositions will not be necessary.  However, because Plaintiffs' proposal does not initially anticipate depositions, the materials in support of their opposition may not technically meet the requirements of Fed.R.Civ.P. 56(e).  This paragraph creates a mechanism by which Plaintiffs can obtain evidence in the proper form if the parties are unable to reach agreement.

By their attorneys,

T. ROWE PRICE TAX-FREE HIGH
YIELD FUND, INC., SMITH BARNEY
INCOME FUNDS/SMITH BARNEY
MUNICIPAL HIGH INCOME FUND,
DRYDEN NATIONAL MUNICIPALS
FUND, INC., LOIS and JOHN MOORE,
and ACA FINANCIAL GUARANTY
CORPORATION

DENISE McKEOWN and ROBERT
LUTTS

/s/ Michael Tabb_____
Thomas Hoffman, Esq.  BBO # 237320
Michael Tabb, Esq. BBO # 491310
Greene & Hoffman, P.C.
125 Summer Street, 14th Floor
Boston, Massachusetts  02110
(617) 261-0040

/s/ William A. Sheridan_____
William A. Sheridan, Esq.  BBO # 458140
Law Offices of William Sheridan
One Center Plaza, Suite 240
Boston, MA 02108
(617) 720-2700

14

**1**

## GREENE & HOFFMAN
### PROFESSIONAL CORPORATION
### COUNSELLORS AT LAW

FACSIMILE
(617) 261-3558
EMAIL
office@greenehoffman.com

125 SUMMER STREET, SUITE 1410
BOSTON, MASSACHUSETTS 02110
(617) 261-0040
www.greenehoffman.com

**BY FAX AND FIRST CLASS MAIL**

September 14, 2005

Scott A. Roberts, Esq.
Sullivan Weinstein & McQuay
Two Park Plaza
Boston, MA 02116

**RE: Bradford College Securities Litigation**

Dear Scott:

I have called you a number of times over the past few weeks to discuss Gadsby & Hannah's request that we reach agreement on access to the Bradford College documents we have both agreed to preserve. For some reason, you have not returned these calls.

We have no problem with the parties viewing the documents whenever convenient for the parties and Gadsby, with Gadsby retaining all originals and the parties indicating to Gadsby which documents they wish to copy (and, of course, paying for all copies made). We see no reason that all parties be present at the same time.

Alternatively, we will ask Gadsby to scan all documents that have been preserved and you may have custody of the originals (with the understanding that they would not be destroyed until the conclusion of the litigation).

If you have any objection to either of these proposals, let me know as soon as possible.

Sincerely,

Michael Tabb

Enclosure

Scott Roberts, Esq.
Re:    Bradford College Securities Litigation
September 14, 2005
Page 2

cc:    Sarah Walters, Esq.

# 2

# SULLIVAN WEINSTEIN & MCQUAY

A PROFESSIONAL CORPORATION
COUNSELLORS AT LAW

SCOTT A. ROBERTS
(617) 348-4340
SRoberts@swmlawyers.com

September 15, 2005

***BY FACSIMILE AND MAIL***
Michael Tabb, Esq.
Greene & Hoffman PC
125 Summer Street, Suite 1410
Boston, MA 02110

RE:   **McKeown, et al. v. Advest, Inc., et al.**
      **Consolidated Actions Nos. 05-10176 and 04-11667**

Dear Michael:

The last few weeks have been extremely hectic for me, with a series of depositions in Idaho, Texas, and Arizona and a brief attempt at a vacation in Maine. My attentions have been elsewhere, and please accept my apologies for not responding to your earlier calls.

With respect to the Bradford College documents in the care and custody of Gadsby Hannah, I understand that Gadsby Hannah has indicated that it will not permit the bondholders to begin inspecting and reviewing those documents at this time absent an agreement of all parties. On behalf of Bradford's trustees and officers, please be advised that we will not agree that such inspection and review may occur while the defendants' various Motions to Dismiss are pending before Judge Stearns. The Private Securities Litigation Reform Act plainly provides that "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." 15 U.S.C.A. §78u-4(b)(3)(B)(emphasis added). There is no basis to sidestep this restriction. Gadsby Hannah is preserving the various records that we designated, and there is no undue prejudice to the plaintiffs in awaiting the outcome of the motions to dismiss, as the PSLRA contemplates, particularly given that we believe that the Court's action on those motions will bring this matter to an end.

Sincerely,

Scott A. Roberts

cc:   Charles A. Dale, Esq.
      Sarah E. Walters, Esq.