UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DENISE MCKEOWN and ROBERT LUTTS<br><br>                    *Plaintiffs*<br>v.<br><br>ADVEST, INC., et. al.<br><br>                    *Defendants* | Civil Action No.: 05-10176-RGS |

Consolidated With

| | |
|---|---|
| T. ROWE PRICE TAX-FREE HIGH YIELD FUND, INC. et al.<br>                    *Plaintiffs*,<br>v.<br><br>KAREN M. SUGHRUE, et. al.,<br>                    *Defendants*. | Civil Action No.: 04-11667 RGS |

**AFFIDAVIT OF THOMAS HOFFMAN IN SUPPORT OF T. ROWE PLAINTIFFS' MOTION TO VACATE DISMISSAL**

I, Thomas Hoffman, having personal knowledge of the information set forth herein, hereby state and declare as follows:

1. I am attorney licensed to practice law in the Commonwealth of Massachusetts and a member in good standing of the bar of the United States District Court for the District of Massachusetts. I am counsel for the plaintiffs in Civil Action 04-11667, T. Rowe Price Tax-Free High Yield Fund, Inc., Smith Barney Income Funds/Smith Barney Municipal High Income Fund, Dryden National Municipals Fund, Inc., Lois and John Moore, and ACA Financial Guaranty Corporation.

2. In June 2005, I participated in a document review in Haverhill, Massachusetts in connection with this action. Our office had been informed by Brenda Smith, a former officer of Bradford College that the College's bankruptcy estate desired to sell real estate that was being used to store the College's administrative records. The College wanted the parties to this litigation to examine the records which were remaining, decide which ones were relevant to the litigation and make arrangements to store them. We were told that anything not selected would be destroyed. I understand that a similar message was communicated to counsel for the Bradford Officers and Trustees, and on a mutually convenient date in June 2005, Michael Tabb, another lawyer in my office who represents the Plaintiffs and I, met Scott Roberts, counsel for the Bradford Defendants in Haverhill to jointly examine the remaining Bradford records.

3. While Mr. Tabb and Mr. Roberts spent most of the day determining which boxes should be preserved and which documents destroyed, I examined the contents of some of the boxes. I discovered a box containing the records of the Bradford College Trustees from the time of the bond issue that is the subject of this litigation. The boxes included minutes of Trustees Meetings which our office had never seen and correspondence between the Trustee and senior management of the College. In one box I found a letter from Defendant Karen Sughrue, Chair of the Board of Trustees, to Defendant Donald Kiszka. The letter was written in the fall of 1998 when the College was in crisis because enrollment was substantially below the College's expectations. In the letter, Ms. Sughrue expressed her frustration and vexation that the Board of Trustees had first been informed at the May 8, 1998 Trustee's meeting that College officials expected that the fall enrollment would be 30 students lower than previously projected. Among other things she expressed the opinion that the Board of Trustees should have been informed about the likely enrollment shortfall earlier.

4.     I brought this letter to Mr. Tabb's attention. Both of us agreed this letter was very important to our clients' case. This letter was the first time we were aware that the Bradford trustees and officers knew with near certainty that the College would not meet the enrollment goals that were the basis of the projections in the Official Statement. Although we had seen documents that informed us that the Trustees discussed whether a revised budget should be prepared to insure a sufficient reserve if the College missed its enrollment goal by 25 to 30 students, these documents made it appear that this was simply contingency planning. None of the minutes directly stated that the College's officers had informed the Board that it was likely that the enrollment targets will not be met.

5.     The Sughrue letter caused us to review all the records we possessed regarding the May 1998 Trustee's meeting and the budget cuts enacted as a result of that meeting in a new light. This has resulted in many of the new allegations relating to Defendants' knowledge that the College would not meet the enrollment goals and the effect of the budget cuts implemented after the May 8 Trustee's meeting.

6.     Our office does not have a copy of the Sughrue letter. We did not bring copying or scanning equipment to Haverhill since we knew that boxes worth saving would be preserved, and we assumed we would be able to review the contents of the boxes in more detail shortly thereafter. In Haverhill, the counsel agreed the saved boxes should be stored at the offices of Bradford's bankruptcy counsel, Gadsby and Hannah. After the boxes were transferred, however, when we tried to get access counsel for Bradford would not permit us to review the boxes unless there was agreement regarding access with Defendants' counsel. When we contacted Mr. Roberts to discuss

3

rules for access, he refused to permit such access, citing the mandatory discovery stay under the PSLRA.

7.  We have no doubt that important evidence concerning Defendants' scienter and other issues relevant to this case are contained in the boxes which we have preliminarily reviewed, but have not had the opportunity to study in depth.

Signed under the pains and penalties of perjury this 20th day of October, 2006.

/s/ Thomas G. Hoffman

Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be send to those indicated as non-registered participants on October 20, 2006

**/s/ Michael Tabb**